```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

Marvin Edwards,                   :
     Plaintiff,                   :
                                  :
v.                                :    Case No. 3:04cv1430 (JBA)
                                  :
Metro-North Commuter Railroad     :
Company, et al.,                  :
     Defendants.                  :
```

### RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION [DOC. # 65]

Defendants Metro-North Commuter Railroad Company ("Metro-North"), Metro-North Director of Power Systems James Gillies, and Metro-North Overhead Line Department General Supervisor Joseph Cleary move for reconsideration of the Court's Ruling on Defendants' Motion for Summary Judgment ("Summary Judgment Ruling") [Doc. # 28], which granted in part and denied in part defendants' motion, maintaining plaintiff's discrimination and retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, et seq., and his claim of intentional infliction of emotional distress.  Familiarity with the factual and procedural background of this case, as detailed in the Summary Judgment Ruling, is presumed.

Defendants seek reconsideration of the Court's ruling as to plaintiffs' discrimination and retaliation claims on the following grounds: (1) that the Court overlooked the holding of

1

<u>Collins v. New York City Transit Authority</u>, 305 F. 3d 113 (2d Cir. 2002), and thus failed to accord substantial weight to the award of the Special Board of Adjustment ("SBA") upholding Metro-North's termination of plaintiff's employment; (2) that the Court erroneously found a question of material fact based upon inadmissible hearsay evidence of plaintiff that was speculative and not based on personal knowledge as required by Fed. R. Civ. P. 56(e); and (3) that the Court's reliance on plaintiff's participation in a class action lawsuit was misplaced because although that lawsuit was not settled until December 2002, plaintiff's claims in that action were dismissed by way of summary judgment in early 1998, thus precluding any inference of retaliatory conduct based on temporal proximity between this participation and the adverse employment actions alleged by plaintiff.  For the reasons that follow, defendants' Motion will be granted and the Court's Summary Judgment Ruling modified, as described herein.

**I.   Standard**

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).

Reconsideration is appropriate only "if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994).

Here, defendants address Collins v. New York City Transit Authority, 305 F. 3d 113 (2d Cir. 2002), and the issue of the weight to be accorded the decision by the SBA, as well as other recent Second Circuit case law on the issue of temporal proximity between protected activity and adverse action, which the Court did not address in its Summary Judgment Ruling. Defendant also refines its argument with respect to plaintiff's evidence of discrimination in the form of comparison to purported other similarly situated employees, raising issues warranting the Court's reconsideration of the sufficiency of plaintiff's proof on his discrimination claims. Accordingly, defendant's Motion for Reconsideration is granted, and the Court's Summary Judgment Ruling will be modified as detailed below.

## II.  Discussion

### A.  Discrimination Claims

Termination

As noted above, defendant disputes the Court's conclusions as to plaintiff's discrimination claims with respect to the adverse employment action of his termination in December 2003,

3

contending that the evidence relied on by plaintiff, and the Court, as to the similarity of plaintiff's alleged comparators was incompetent and insufficient.  The Court agrees.

To establish the fourth element of a prima facie case of discrimination with evidence of disparate treatment, Mr. Edwards must show that he was treated differently from similarly situated non-African-American employees.  "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare [him]self must be similarly situated in all material respects."  Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997).[1]

Plaintiff claims disparate treatment by identifying in his affidavit several Caucasian individuals who he claims committed similar violations as he did, but were not fired.  See Pl. Aff. [Doc. # 49, Ex. 4] ¶ 23.  However, as plaintiff admitted at his deposition and as he also acknowledges in his opposition memorandum to defendant's reconsideration motion, he has no personal knowledge of the incidents for which these alleged comparators were disciplined, of the discipline they actually received, or of any of the disciplinary histories of any of these individuals.  See Edwards Dep. [Doc. # 31, Ex. E] at 112-17, 119-

---

[1] Accord Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) ("What constitutes 'all material respects' . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.").

20, 152-53; Pl. Opp. Br. [Doc. # 68] at 5 (admitting that "plaintiff does not have personal knowledge one way or the other as to the disciplinary records of all of the alleged comparators"). The one employee, Mr. Pfeiffer, whom plaintiff claims to know was previously terminated, committed a work violation significantly less serious than plaintiff's request to de-energize the wrong portion of track (by 12 miles); Pfeiffer made the request for the track to be de-energized and double-checked to make sure that power control had de-energized it, see Edwards Dep. at 96-97, 110-11, and, moreover, plaintiff's testimony as to Pfeiffer's previous termination was based on hearsay and plaintiff was not aware of any other disciplinary actions previously taken against Mr. Pfeiffer, see id. at 111.[2]

Thus, even if plaintiff's affidavit were sufficient to establish comparable seriousness of violations committed between himself and the alleged comparators, the absence of any evidence concerning the disciplinary records of the claimed comparators, particularly in light of the severity of plaintiff's own

---

[2] Fed. R. Civ. P. 56(e) requires that an affidavit submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Evidence that would be inadmissible at trial may not be used to meet plaintiff's burden under Rule 56. See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp, 769 F.2d 919, 924 (2d Cir. 1985). Evidence offered to establish that purported comparators are similarly situated cannot be based on hearsay or "common knowledge." See Shumway, 118 F.3d at 64-65.

disciplinary history, is fatal to his disparate treatment claim. See Guerrero v. Conn. Dep't of Children & Families, 315 F. Supp. 2d 202, 210 (D. Conn. 2004) (granting motion for summary judgment, finding that plaintiff was not similarly situated to the comparator where "the comparator did not have the history of past disciplinary problems that [plaintiff] had"); Padilla v. Harris, 285 F. Supp. 2d 263, 270 (D. Conn. 2003) (granting motion for summary judgment noting "[p]rior disciplinary problems may be sufficient to justify deferential treatment of otherwise similarly situated employees").  Indeed, while plaintiff presented no competent evidence concerning the disciplinary histories of the alleged comparators, Gillies testified that "[n]o other Lineman . . . White or Black, had as serious a record as Mr. Edwards – of three major incidents of discipline within a three-year period."  Gillies Aff. [Doc. # 31, Ex. B] ¶ 3.

Given this opportunity for reconsidering its prior ruling, the Court concludes that in that ruling the Court improperly placed on defendants the burden of demonstrating dissimilarity of conduct and disciplinary histories of the purported comparators, whereas the burden correctly rests on plaintiff to establish similarity "in all material respects," and as detailed above the evidence he offered was insufficient to meet this burden.  Thus, because the plaintiff's allegations of similarity are not based on admissible evidence and, even if supported by the record, do

6

not suffice to establish that the alleged comparators were similarly situated to plaintiff "in all material respects," including severity of violations and disciplinary histories, plaintiff cannot satisfy the fourth element of the prima facie case for race discrimination.

The Court also acknowledges defendants' argument concerning the mandate of the Collins case and its application to the finding of the SBA rejecting plaintiff's claim of discrimination and upholding his termination.  Collins held that a termination occurring "after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination [is] highly probative of the absence of discriminatory intent in that termination" and such a decision "will attenuate a plaintiff's proof of the requisite causal link," such that "the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact – e.g. new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised."  Collins, 305 F.3d at 119.  Plaintiff does not dispute the holding of Collins, but only argues that he is not precluded from bringing a Title VII claim by the SBA decision, a proposition that defendants do not dispute and was recognized by Collins.  See id.  Plaintiff also seeks to distinguish Collins factually on the basis that Collins involved

a plaintiff who had assaulted his supervisor, but the import of <u>Collins</u> is not premised on the nature of the employee's conduct, but rather on the fact of a decision by a neutral arbiter supported by substantial evidence that is adverse to the plaintiff.

As detailed above, plaintiff does not present sufficient evidence to support an inference of discrimination, even absent consideration of the "additional probative weight" of the adverse finding by the SBA, and thus he certainly does not meet the higher bar of "present[ing] strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised," as required in <u>Collins</u>. Thus, <u>Collins</u> also provides a ground for modifying the Court's prior ruling on plaintiffs' discrimination claims.

Accordingly, summary judgment is granted as to plaintiff's discrimination claims concerning his termination.

<u>     Failure to Provide Protective Gear</u>

Other than to dispute, in a footnote, the Court's findings with respect to the purportedly nondiscriminatory reasons defendants offered for their failure to provide plaintiff with protective gear, defendants do not provide a basis for modification of the Court's ruling on plaintiff's discrimination claim with respect to this adverse employment action. As detailed in the Court's Summary Judgment Ruling, <u>see</u> Summary

Judgment Ruling at 18-19, the record evidence – including contradictory reasons offered for the failure to provide the gear to plaintiff and evidence that other employees received protective gear during the same time period that plaintiff did not – could support an inference of racial discrimination resulting in this adverse employment action. Accordingly, the Court's ruling as to this claim stands.

### Failure to Requalify to "Class A" Status

Likewise, defendants do not appear to dispute the Court's ruling with respect to plaintiff's discrimination claim concerning the failure to requalify him to "Class A" status, thus potentially limiting his ability to work additional hours and collect overtime pay. Because there is record evidence of pretext concerning defendants' proffered reasons for their failure to requalify plaintiff, see Summary Judgment Ruling at 17-18, plaintiff's discrimination claim as to this adverse employment action also stands.

### Conclusion

Thus, the Court has reconsidered its ruling with respect to plaintiff's discrimination claims and dismisses those claims to the extent they challenge plaintiff's termination, but adheres to its prior ruling on those claims to the extent they are directed at redressing defendants' failure to requalify him and the failure to provide him with protective gear, saving those aspects

of plaintiff's discrimination claims for trial.

**B.     Retaliation Claims**

As a preliminary matter, as plaintiff appears to concede by not addressing the issue in his Opposition Memorandum, plaintiff's involvement in the class action lawsuit against Metro-North which began in the 1990s concluded in early 1998 when all of his claims were dismissed by summary judgment. See Robinson v. Metro-North Commuter R.R. Co., 94civ7374 (JSR), 95civ8594 (JSR), 1998 WL 17742, at *10 (S.D.N.Y. Jan. 16, 1998). Accordingly, the Court takes this into account in its reconsideration of plaintiff's retaliation claims, whereas in its Summary Judgment Ruling the Court relied on the fact that the lawsuit was not settled until December 2002.

Termination

Defendants, citing to recent United States Supreme Court and Second Circuit case law, claim that the attenuated temporal connection between the filing of plaintiff's CHRO charge in March 2003 and his removal from service in October 2003, without additional evidence, is insufficient to give rise to an inference of retaliatory conduct.  The Court acknowledges the case law cited by defendants, including Clark County School District v. Breeden, 532 U.S. 268 (2001), but does not agree that such authority dictates dismissal of plaintiff's claim of retaliatory termination.  The Supreme Court in Breeden observed that "[t]he

10

cases that accept <u>mere</u> temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" 532 U.S. at 273 (citing cases) (emphasis added).

However, the authority cited by defendants is distinguishable because this case does not present a situation where the only evidence of claimed retaliatory conduct is temporal proximity. Rather, as recognized in the Summary Judgment Ruling, there is also plaintiff's testimony that since the filing of the class action lawsuit in the mid-1990s, he has been subjected to "hounding," there being nothing in the record to suggest that this treatment did not continue until the time of his termination. This ongoing "hounding" preceding plaintiff's termination could support an inference that, after plaintiff filed his CHRO charge, defendants were simply lying in wait for an "excuse" to fire plaintiff in retaliation for his filing of the charge. Thus, contrary to defendants' contention, there is evidence to support an inference of "continuing retaliation" that is sufficient to strengthen the causal link between the filing of plaintiff's CHRO charge in March 2003 and his termination approximately 7 months later, specifically, "hounding" that was ongoing during that time period. Thus, the Court adheres to its ruling as to the termination aspect of plaintiff's retaliation

claim.

"Hounding"

Accordingly, because according to plaintiff's testimony the "hounding," which the Court already determined constitutes adverse employment action in the context of a retaliation claim, commenced with the filing of the class action suit and continued up until his termination, a jury could reasonably infer that the "hounding" was retaliatory.  Additionally, as described above, the "hounding" provides a retaliatory backdrop which strengthens the causal connection between plaintiff's filing of a CHRO charge and his termination.

Failure to Provide Protective Gear and Failure to Requalify

As defendants note, both the alleged failure to provide plaintiff with protective gear and failure to requalify him to Class A status occurred in late 2002 or early 2003 and therefore prior to the filing of plaintiff's CHRO charge and significantly after the cessation in early 1998 of plaintiff's involvement in the class action lawsuit.  Such a large gap between the protected activity (participation in the lawsuit) and these claimed adverse employment actions, without more, negates any inference of causal connection and thus plaintiff's retaliation claims as to these adverse employment actions must be dismissed.

Conclusion

Accordingly, the Court adheres to its initial ruling and

saves for determination at trial plaintiffs' retaliation claims as to his termination and alleged "hounding."  Plaintiff's retaliation claims as to the failure to provide protective equipment and failure to requalify him are dismissed.

### III. Conclusion

For the foregoing reasons, defendants' Motion for Reconsideration [Doc. # 65] is GRANTED and the Court's Summary Judgment Ruling modified, as detailed above.  Accordingly, the following claims remain for trial: (1) plaintiff's discrimination claims as to the adverse employment actions of failure to provide protective gear and failure to requalify him to Class A status; (2) plaintiff's retaliation claims as to his termination and alleged "hounding"; and (3) plaintiff's intentional infliction of emotional distress claim.

                              IT IS SO ORDERED.

                              /s/
                              Janet Bond Arterton
                              United States District Judge

**Dated at New Haven, Connecticut this 6th day of December, 2006.**